# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **DOCKET NO. 19-CR-10119-DJC** |
| | ) | |
| PAUL IWUANYANWU | ) | |

## DEFENDANT'S MOTION FOR RELIEF FROM MISJOINDER AND/OR SEVERANCE OF COUNTS

Defendant Paul Iwuanyanwu respectfully moves, pursuant to Fed. R. Crim. P. 8(a) and 14(a), for severance of Counts One, Two and Six ("Business Email Compromise Group" or "BEC counts") from Counts Three, Four and Five ("Romance Group" or "Romance counts") of the pending superseding indictment. He requests a separate trial on the BEC counts, and a separate trial on the Romance counts.

## THE CHARGES

The grand jury returned the original indictment in this case on April 9, 2019, which lodged on that same date. D.E. 23. It contained three counts relating to an alleged scheme to defraud companies by compromising business emails. The grand jury later returned superseding indictment on July 7, 2020, also lodged on that date. D.E. 121. That indictment added three new counts pertaining to allegations of a second distinct scheme to defraud; in addition to the original business email compromise scheme, it included allegations of involvement in a "romance scam." Separate counts pertain to the separate schemes.

Counts One, Two and Six of the superseding indictment charge Mr. Iwuanyanwu with conspiracy to commit wire fraud, wire fraud, and unlawful money transactions. These charges arise from his alleged participation in business email compromise ("BEC") scams, described in the indictment as sophisticated frauds targeting businesses involved in wire transfer payments.

The frauds are allegedly carried out by compromising or spoofing legitimate business email accounts through social engineering or computer intrusion techniques to cause employees of companies to conduct transfers of funds to unintended recipients. The conspiracy charge alleges operation of the conspiracy between April 2017 and March 2019.

The indictment describes the victims of the BEC counts conspiracy allegation charged in Count One as: a custom tube and pipe manufacturer based in Illinois; an international ship management company based in Dubai, United Arab Emirates; a construction company based in Moscow, Russia; a textile company based in Pakistan; a shipping company based in California; and a plastics company based in Michigan. Count Two is based on the allegations of the business email compromise scheme to defraud the Moscow construction company and the receipt of an international wire transfer of $884,274 from that company into a Bank of America account. Count Six is based on a wire transfer of $95,320 derived from defrauding the Moscow construction company as alleged in Count Two.

Counts Three, Four and Five charge Mr. Iwuanyanwu with conspiracy to commit mail and wire fraud, wire fraud, and mail fraud. The indictment alleges that these charges arise out of a "romance scam" conspiracy that operated by engaging in purported romantic relationships with individuals and persuading them to send or receive money for the conspirators. It alleges that the conspiracy operated between in or about 2016 through January 2020.

The indictment describes the victims of the romance counts as a 38 year old woman living in Brockton, Massachusetts (victim A); a 58 year old woman living in Clyde, North Carolina (victim B); and a 65 year old woman living in Tacoma, Washington (victim C). Count Three charges a conspiracy to use mail and wire communications to obtain money and property by engaging in romantic relationships with the victims and defrauding them by causing them to

send money to the conspirators. Count Four alleges that Mr. Iwuanyanwu, as part of the romance scheme to defraud, is legally responsible for a wire transmission of $3000 from Victim B in North Carolina into a bank account in Massachusetts under the control of Victim A. Count Five charges that as part of the romance scheme to defraud, Mr. Iwuanyanwu received in Massachusetts via mail a $500 Moneygram order from Victim C, then residing in the State of Washington. It is not immediately clear from the face of the superseding indictment whether the government intends to assert that Mr. Iwuanyanwu communicated with Victims B and C, who respectively according to the indictment believed they were communicating with "Sergey Vinc" and "Hugh Morgan".

## ARGUMENT

### I.  THE COUNTS ARE NOT PROPERLY JOINED

Fed. R. Crim. P. 8(a) provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

In the ordinary case, the basis for joinder under Rule 8 "should be discernible from the face of the indictment." *United States v. Natanel*, 938 F. 2d 302, 306 (1st Cir. 1991). The remedy for misjoinder is severance. *Id.* Because the counts in the indictment in this case are neither of the same or similar character, based on the same act or transaction, nor connected with or parts of a common scheme or plan, they are improperly joined and must be severed for trial.

### A.  *Same or Similar Character*

Rule 8(a)'s provision for joinder of offenses that are of the "same or similar character" is controversial. The First Circuit in *United States v. Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996), questioned why Congress would have provided for joinder of offenses that have the "same or

similar character,"  noting that the "same or similar" language was "drawn from earlier law without explanation" and that "about the best one can say is that in such cases the evidence of one crime is more likely to be independently admissible, on theories reflected in Fed. R. Evid. 404(b)[.]" *Randazzo*, 80 F.3d at 627 n.1.

The Second Circuit has also observed that the "customary justifications for joinder (efficiency and economy) largely disappear" when "all that can be said of two offenses is that they are of the 'same or similar character.'" *United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978).

> [T]he only time likely saved by joinder of "same or similar character" offenses is the time spent selecting a jury . . . On the whole, however, the "trials" on the joined charges are distinct. At the same time, the risk to the defendant in such circumstances is considerable.

*Id.*

So it is here. The BEC counts are distinct from the romance counts as to the means of the fraud, the victims, the relative amounts of money involved, and factual basis which would form Mr. Iwuanyanwu's legal culpability. The BEC counts rest upon allegations of a sophisticated scheme involving spoofing legitimate business email accounts through social engineering or computer intrusion. Emails to and from victim businesses were intercepted, and subsequently emails would be sent from spoofed email addresses that looked almost like legitimate email addresses belonging to companies with whom the victim companies did business, and, in coordination with direction in the spoofed emails, payments from the victim companies would be redirected to bank accounts controlled by unintended recipients. The victim businesses were various foreign and domestic corporations with world-wide business. It is not believed that the government intends to assert at trial that Mr. Iwuanyanwu personally conducted email spoofing or computer intrusion. Rather, it is believed that the government's theory of culpability rests on

Mr. Iwuanyanwu's conduct in opening a bank account which received funds and attempting unsuccessful wire transfers of those funds.

The romance counts, on the other hand, seem to rest upon allegations of a scheme operating on the apparent naivete of the victims rather than the BEC trojan horse operation. Moreover, the indictment allegations suggest that the government's theory of culpability rests not on Mr. Iwuanyanwu's direct action, but rather that he manipulated victim A by what the government characterizes as a sham romantic relationship in order to have victim A open a bank account which received money from victim B. As compared with the funds in the BEC counts (nearly $900,000 mentioned in the indictment), the romance counts assert a total amount of $3,500. Moreover, none of the accounts asserted in the BEC counts and the romance counts overlap. And nothing about the indictment suggests that the actions comprising either set of counts were committed to further the other set of counts.

Thus, the BEC counts and the romance counts compromise two distinct alleged schemes. There is insufficient connection to justify trying the two groups of counts together. *See United States v. Perry*, 37 F.Supp.3d 546, 557-58 (D.Mass. 2014)(counts severed where different types of victims and different alleged modus operandi factored into whether "same or similar character" supported joinder). An abstract goal of enrichment through fraud – even if proven – does not suffice to permit joinder under the purview of this prong. *United States v. Buchanan*, 930 F.Supp. 657, 665 (D.Mass. 1996).

The rationale for joinder based solely on the "same or similar character" of the offenses is tenuous at best. *See Perry*, 37 F.Supp.3d at 557 ("[T]he 'same or similar character' standard for joinder has been described as the 'lower end of the range' for joinder where the line between proper joinder and misjoinder may be closest"); *Randazzo*, 80 F.3d at 627-28 & n.1 ("It is

obvious why Congress provided for joinder of accounts that grow out of related transactions – ones that are 'connected' or 'part of a common scheme or plan'; the reason for allowing joinder of offenses having 'the same or similar character' is less clear").  Accordingly, the "same or similar" provision "must be narrowly applied to situations where permitting joinder will not lead to the prejudice addressed in Rule 404(b) of the Federal Rules of Evidence." *Buchanan*, 930 F.Supp. at 665; *cf. Unites States v. Varoudakis*, 233 F.3d 113, 123 (1st Cir. 2000)(noting, in the admissibility context, that the more similar a prior bad act, the more likely it is to be deemed relevant under 404(b), yet the more likely it is that the jury will impermissibly use it to infer that a defendant who committed the prior bad act would be likely to commit the crime charged). As discussed further in section II below, the joinder of Counts Three through Five is highly prejudicial, as they share nothing with the crimes charged in Counts One, Two, and Six except the general category of offense. And critically, the evidence from the romance counts, - which may be perceived as evincing a willingness to exploit vulnerable victims – poses a further danger of conviction on the BEC counts on an improper emotional basis derived from the romance counts. *Varoudakis*, 233 F.3d at 122 ("courts use the term 'unfair prejudice' for evidence that invites the jury to render a verdict on an improper emotional basis"). Correctly understood, joinder is not proper under Rule 8(a)'s 'same or similar character' prong.

### B.  Same Act or Transaction

Joinder under this provision is proper where many facts are common to both sets of charges. *Randazzo*, 80 F.3d at 628. Courts have looked to whether "the same evidence would be admissible in both trials if the counts were severed." *United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004)(no plain error in failing to sever pipe bomb and drug conspiracy charges where indictment charged use of pipe bomb in furtherance of the drug conspiracy).

"In determining whether counts are properly joined, this court considers such factors as 'whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred.'" *United States v. Edgar*, 82 F.3d 499, 503 (1st Cir. 1996), citing *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995)(internal citations omitted).

Court decisions concerning Rule 8(b), having to do with the joinder of defendants, are instructive because Rule 8(b) allows joinder if defendants have engaged in the "same act or transaction, or in the same series of acts and transactions." In ordering relief from misjoinder under 8(b) in a multi-defendant indictment alleging two distinct conspiracies one court observed:

> Of course, in the broadest sense, both conspiracies are part of the same series of acts or transactions constituting offenses – just as the 1995 World Series was part of the same series of acts and transactions that began with Abner Doubleday. But, as this example demonstrates, Rule 8(b) cannot possibly be read so broadly if it is to have any practical meaning.

*United States v. Kouzmine*, 921 F.Supp. 1131, 1133 (S.D.N.Y. 1996). "If the factual matrices of the alleged facts are different, there is no series and hence no joinder." *United States v. Turkette*, 632 F.2d 896, 908 (1st Cir. 1980) *reversed on other grounds,* 452 U.S. 576 (1981).

As described above, the distinct types of victims, locations, and alleged modes of operation cannot justify joinder of the two groups of counts. At its most basic – it is believed that none of the bank accounts identified by the government in each set of counts are the same accounts. Nor does the indictment allege overlap in the identities of others taking part in the alleged conspiracies and underlying acts. Despite the fact that some of charges in both the romance counts and the BEC counts are under the wire fraud statute, and that the almost 24 month period for the BEC counts fall within the larger 48 month period alleged in the romance counts, the whole of the circumstances presented by the indictment do not justify joinder at trial.

7

### C.  Common Scheme or Plan

Joinder is proper under the "common scheme or plan" prong if one illegal activity provided the motive and necessity for another illegal activity. *See United States v. Dominguez*, 226 F.3d 1235, 1239 (11th Cir. 2000)(mortgage fraud and drug charges properly joined where defendant submitted fraudulent income tax returns when applying for mortgage loans in order to conceal that his income was derived from drug sales). Joinder of counts that are not sufficiently "connected" may require reversal. *See United States v. Litwok*, 678 F.3d 208, 216 (2d Cir. 2012)(reversing defendant's conviction for mail fraud and tax fraud).

The business email compromise counts and the romance counts are based on separate transactions and are not part of a common scheme or plan. Nothing alleged in either set of counts can be said to have "motivated" the conduct alleged in the other or to have made it necessary. Consequently, joinder under this prong is improper.

## II.  EVEN IF PROPERLY JOINED, THE BUSINESS EMAIL COMPROMISE COUNTS AND ROMANCE COUNTS SHOULD BE SEVERED TO AVOID THE UNDUE PREJUDICE THAT WOULD RESULT FROM A JOINT TRIAL

Even if offenses are properly joined, the Criminal Rules permit severance at trial if joinder of offenses appears to prejudice a defendant. *Fenton*, 367 F.3d at 21-22. The First Circuit has stated that "Rule 8(a)'s joinder provision is generously construed in favor of joinder [citations omitted], in part because Fed. R. Crim. P. 14 provides a separate layer of protection where it is most needed." *Randazzo*, 80 F.3d at 627. Rule 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

To obtain a severance of joined counts, a defendant must make a strong and convincing show of prejudice. *United States v. Richardson*, 515 F.3d 74, 81 (1st Cir. 2008). Three types of prejudice may result from trying a defendant for several offenses during the same trial:

> (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not the other, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*Id.,* quoting *United States v. Jordan*, 112 F.3d 14, 16 (1st Cir. 1997).

Here, the second concern about prejudice that would arise from a joint trial is particularly salient and warrants severance. At a joint trial, the jury would be presented with allegations that Mr. Iwuanyanwu knowingly participated in two separate fraudulent schemes – as described above, these sets of allegations have striking dissimilarities in means, amounts involved, and purported victims. As in any similar situation, evidence pertaining to one set of allegations may be stronger or weaker comparatively than the other set of allegations. A natural but impermissible conclusion for a jury would be that despite the relative strengths and weaknesses of the allegations individually, Mr. Iwuanyanwu has a bad character and thus is guilty of both schemes. This prejudice from a joint trial would be compounded by the danger of conviction based on jurors' feelings concerning what may be perceived as emotional exploitation of vulnerable victims in the romance counts. Thus, this evidence would be inadmissible propensity evidence.

Under Rule 404(b), prior bad act evidence is strictly inadmissible to "encourage the inference that because the defendant committed a crime [] before, he is the type of person to commit the crime currently charged." *United States v. Lynn*, 856 F.2d 430, 434 (1st Cir. 1988). The evidence may be offered for a non-propensity purpose, such as knowledge, motive, intent, or

lack of accident, subject to balancing under Rule 403. FRE 404(b); *Lynn*, 856 F.2d at 436-37;

*United States v. Flores Perez*, 849 F.2d 1, 4 (1st Cir. 1988). This is referred to as "'special'

relevance." *United States v. Landry*, 631 F.3d 597, 602 (1st Cir. 2011). The government would

have the burden to offer a theory of relevancy for the extrinsic allegations that did not have "an

inference of propensity as 'a necessary link in the inferential chain.'" *Varoudakis*, 233 F.3d at

120. It would need to "articulate precisely the evidentiary hypothesis by which a fact of

consequence may be inferred from the evidence." *United States v. Zimmerman*, 943 F.2d 1204,

1212 (10th Cir. 1991)(internal quotation marks and citations omitted) (emphasis omitted). A

"broad statement merely" offering the evidence to show "'knowledge and intent,'" for instance,

would be "clearly insufficient." *Id*. Where, as described above, the two schemes alleged involved

distinct types of victims, locations, and modes of operation, and share neither motivation nor

necessity, a link between the two would require an inference of propensity.

     And, even if some proper link between the two sets of counts were found, the court would

be required to balance the probative value of that evidence against the danger of unfair prejudice,

confusion of the issues, or misleading the jury under Federal Rule of Evidence 403. *United*

*States v. Gilbert*, 229 F.3d 15, 20 (1st Cir. 2000). In light of the distinctness of the schemes in

types of victims, modes of operation, and locations, and the lack of motivation or necessity for

one scheme by or on account of the other, the likely probative value of the evidence concerning

one distinct scheme as to the other is low. *See id.*, at 23 (taking into account assessment of

degree of probative value in Rule 403 balancing,).

     The danger of a mini-trial on the evidence of one offense within the trial of another must

be weighed in the 403 balance. *Id.* at 24. Apart from confusion of the issues or misleading the

jury, unfair prejudice in this scenario may also arise from the nature of the evidence introduced

in the mini-trial. *See id.* (potential for unfair prejudice where jurors would be exposed to "tawdry details leading to bitter divorce and custody proceedings"); *Varoudakis*, 233 F.3d at 122 ("courts use the term 'unfair prejudice' for evidence that invites the jury to render a verdict on an improper emotional basis").

Here evidence of the romance counts has the potential for a mini-trial with attendant unfair prejudice. Mini-trials are likely where a defendant does not concede evidence of another offense. *Id.* The First Circuit recognizes in addition the inflammatory potential of details of unsavory intimate relationships, intimate relationships of which jurors disapprove, or relationships in which a victim is vulnerable. *See Gilbert,* 229 F.3d at 24("tawdry details leading to bitter divorce and custody proceedings"); *United States v. DelGado-Marrero,* 744 F.3d 167, 205 (1st Cir. 2014)(abuse of discretion under Rule 403 in admitting evidence of homosexuality, because some jurors may find lifestyle and sexual preferences offensive);*United States v. Souza*, 749 F.3d 74, 84 (1st Cir. 2014)(citing *Gilbert* and noting risk of prejudice in evidence that defendant defrauded an elderly, vulnerable man). The romance count allegations have the potential to sway jurors emotionally toward guilty convictions based on allegations of exploiting intimate relationships, including people that might be viewed as older and vulnerable with little disposable income. Probative value is relative to the availability of other evidence to prove the same point. Among the reasons described above, contrary to the alleged amounts involved in the purported "business schemes", the amounts of money involved in the purported "romance scheme" allegations is modest, thus making the probative value of evidence from one set of counts to the issues in the other set of no great consequence. And, where the government has other evidence to prove a fact in issue, the introduction of controversial evidence to prove the same point is disfavored. *See Lynn*, 856 F.2d at 436-37.

Again, the distinctness of the BEC counts and romance counts' alleged facts, type of victims, location, and manner of operation make any special relevance of evidence of one scheme to another dubious. If there is any probative value, it is low. The dangers of prejudice from a natural propensity inference in introducing evidence of a second fraud scheme involving evidence of what may be viewed as not only financial but emotional exploitation of vulnerable victims, on the other hand, are substantial. This is especially so where the government has to date noticed pursuant to 404(b) in only the most vague terms the prospect of other non-indicted acts it asserts it uncovered from a swath of obtained electronic evidence which it may seek to introduce attendant to each "scheme".[1]

Finally, there is no indication that the government needs to use evidence of one alleged fraud to prove a wholly separate one. The two groups of counts should be severed.

---

[1] In a letter dated June 8, 2021, the government stated:

> The United States is also disclosing and giving notice of potential evidence that it may offer, which evidence is intrinsic and inextricably intertwined with the crimes in this matter.
> Nonetheless, to the extent that such notice may be deemed to be required, pursuant to Fed. R. Evid. 404(b), the United States hereby gives notice of this evidence, which may also be offered for purposes permitted under Rule 404(b ), including to show motive, preparation, plan, knowledge and absence of mistake or accident:
>
> (1) Evidence relating to transactions and wires that are described in the Indictment and part of the conspiracies charged but not specifically identified in the substantive counts;
>
> (2) Evidence relating to transactions, fraudulent conduct and wires that are not specifically
> listed in the Indictment but are part of the charged conspiracies. This could include evidence from bank records and the defendant's telephone showing the pattern of transactions in which he was engaged and his further solicitation of money laundering work.

## CONCLUSION

For the above reasons, the BEC Counts should be severed from the romance counts as requested and there should be two separate trials.

Respectfully submitted,
PAUL IWUANYANWU,
By his attorneys,

*/s/ Jane F. Peachy*
Jane F. Peachy, BBO # 661394

*/s/ Brendan Kelley*
Brendan Kelley, BBO #569054

FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 15, 2021.

*/s/Brendan Kelley*
Brendan Kelley